23-1241 That mic started acting up yesterday. So if anybody hears something being fuzzy, it's a technological issue that we're dealing with. Good morning, Your Honors. Both Twin Cities filings, its appellee's brief and its 28-J letter response, evidence of fundamental misunderstanding of California's Civil Code Section 1770A8, which confers standing on consumers to sue for injury and damages, they suffer where defendants implicitly disparage its competitors. And that is evidenced by Schaefer, the Calafia Farms, which notes such statements of disparaging can be actionable, if untrue, by consumers under the unfair competition law, false advertising law, and the CLRA, which is 1770A8. Now, in terms of what is going on in New York, in New York, the implicit disparagement case in 2013 is natural organics from the appellate district published. And it states the statement that HON had been appointed the exclusive distributor of natural organics products could imply that NPN's inventory was unauthorized. That's an implication from the facts asserted. So what do we have here? I don't understand the implication here. It's that the products next to Zumi's products could also have been not appropriately licensed as disinfectants? Yeah, they were not disinfectants authorized by the FDA, but the presumption is that they might be. How? I don't get it. Well, let me read you the particular allegations. Where does that implication come from? The implications come from the allegations of the complaint, which of course for coverage purposes is all that matters. So we say that antibacterial wipes were alleged to be products that consumers could use anytime, anywhere to kill germs fast and killed 99% of germs. The wipe-out decontaminant spray was sold on shelves adjacent to EPA registered disinfectant products. Zumi selected packaging that resembled the packaging used by registered surface disinfectant wipes such as Lysol, which was a competitor. And even more critically, the Zumi selected packaging, or rather the consumers, were led to believe competitors' products made a fraudulent omission by failing to disclose that their products had not been approved as safe and effective on surfaces. So would that have, what I'm trying to understand is in the moment, in the time frame that leads to the filing of the underlying complaint, is it Proskin? Proskin, right. At that time, there has been no public disclosure that Zumi's products in fact were not FDA authorized. Correct. So how could a consumer, I'm standing in the aisle at Walmart and there's Lysol and all of these affirmatively represented as disinfectants, including Zumi's products, the wipe-out products. How am I going to look at that and believe that the product next to it is not a true disinfectant if nobody's disclosed that Zumi's products are not licensed? Well, the Lysol product is a disinfectant and is labeled, but it doesn't say what is true about wipe-out. Wipe-out is claimed to be a safe and effective surface cleaner. So by saying that, the Zumi product implies that the Lysol product is not safe and effective? One could presume as a consumer that even though it's a disinfectant, a more generically understood terminology as understood by consumers, hey, Zumi's product is safe and effective for cleaning surfaces. Gosh, they don't say that about Lysol. Lysol must not be as good. Oh my gosh, and it's a lot cheaper. So we have Price Gouger Lysol who is not a safe and effective surface cleaner to a consumer as perceiving what's there in the aisle. That's the analogy. You're not referencing the competitor's product. They didn't specifically mention the word Lysol, but that's not required. So you're saying it's an implicit reference by being placed next to Lysol, by requesting that its product be placed next to other disinfectants? Not just that. The actual labeling of our product says our product is a safe and effective surface cleaner. Well, let me ask you this. Has any court found that the specific reference requirement is satisfied where a product mimics the branding of another product, of a competitor's product, and is just placed next to it? Do you agree? That would be ACME, United Corp. Publications drew a comparison between its products and stainless steel products, not the competitor, the product type, and a specific comparison with the underlying plaintiff's products. Here the comparison is safe and effective. What I'm asking about is not one of an implicit reference, but a specific reference to a competitor's product. That's not required. I understand that's your argument. What I'm asking is, is there any case that says that a non-specific or an implicit requirement is enough? Those cases have implicit disparagement if you look at ACME closely from the Seventh Circuit. If you look at Seagate, too. Okay, so you're referring to the Seventh Circuit. If you could just for a moment answer my question, if you would. What I'm asking is, I understand your position is there doesn't need to be a specific reference. What I'm asking is, do you have a case that explicitly stands for the proposition that there doesn't need to be a specific reference? I think that's a fair understanding of ACME and even more of Seagate than the Ninth Circuit. A statement of product equivalence was enough to infer implicit disparagement that Convo's technology was no better than Seagate's. And so what you have is... You're saying that, you're saying, if I understand correctly, that in any instance in which one competitor in the marketplace advertises its product using an adjective that is not also used by the competing products can be understood as a disparagement of the other product? No, it's more than that, Your Honor. We have a very specific state of combination of elements. So you're saying that because SUNY said about its product that it's efficient and safe disinfectant, that unless those words were used, exactly the same words were used or something to the same effect by competitors, that could be understood as a disparagement of the competitor's product, saying they're not safe? A contested allegation of equivalence creates potential disparagement under those two cases and another decision called Crown Labs, where the underlying complaint states that the misleading advertise has misled consumers into believing that LavoClan is a generic equivalent. So there they're talking about generic equivalence. Here we're talking about the fact that we are an equivalent to a disinfectant by virtue of what we do when the disinfectant itself doesn't say that it's safe and effective on surfaces. But consumers might believe that that's what they intend to say by saying they're disinfectant. So we, in effect, position ourselves for the consumer market in a way that leads them to think we're at least an equivalent, if not superior. You don't have to be superior. You can be equivalent under Jar Labs and the three cases I mentioned. I think I'm out of time, Your Honor. All right. We will see you for another couple of minutes in rebuttal. We'll hear now from the appellees. Mr. Freeman. Thank you, Your Honors. Good morning. May it please the Court. I am Jonathan Freeman on behalf of Twin City. A false advertising claim is not the same as a disparagement claim. In Elite Brands, this Court held that under New York insurance coverage law, a disparagement claim under New York insurance coverage is triggered only if an underlying complaint makes, and I believe Judge Kanye was referring to this earlier, specific assertions of unfavorable facts reflecting on the rival product. That gets repeated in the dollar phone decision, which this Court affirms in 2013. It's consistent, of course, with New York state law, which is cited in this Court's decisions. And I'll take you back to that New York What do you say about the cases that your adversary cited? Well, two of them aren't in his brief, so I don't know what they are. ACME is, that's a Seventh Circuit decision applying Illinois law. The ACME decision in applying Illinois law is similar to the natural organics decision from New York. That is, yes, there are some circumstances where there's kind of an inevitable implication of in its knives and other products. And they said, everyone who uses stainless steel has inferior products. Okay, well, by implication, if you had a stainless steel knife, yours was inferior. That was the necessary implication of what was happening. It's nothing like what we have here. Likewise, in the natural organics case, that explicitly referred to other products of a type that included the competitor's products. Precisely, Judge LaValle, yes. And that's the same in natural organics, which is his best case, out of New York, out of the appellate division. In natural organics, there is a distributor, or there's a manufacturer, who manufactures a product, and in certain Baltic countries, they have an exclusive distributor. And they change their distributor, and when they change their distributor, they say, the new guy is our exclusive distributor. Well, it turns out that the old guy actually still had the distributorship running for a little while, still had product on hand, but the natural implication was that was all unauthorized products now. There was no way to get around that implication. When you say exclusive, you necessarily are making representations about other people who purport to be distributors that they're unauthorized. Exactly. So I'm not making some kind of blanket statement, and I don't think New York courts are making some kind of blanket statement, that there is no situation when there can ever be such a thing as implicit disparagement. There can, when it's the natural implication of the clear statements that are in the Acme case. It's not true here. So if Wipeout said something like, we've invented a new proprietary disinfectant, and it's the only one that kills COVID. Right? As opposed to simply that here the representation is just, our product is safe and effective, which your argument is it doesn't make any implication as to any other products. That's correct, Your Honor. And Judge Merriam, if you go back to actually the Julie Research case, which is the New York Intermediate Appellate case that is cited in Elite Brands for the proposition that Judge Kahn was referring to. If you go back to that case, there you have someone who makes circuit splitters, and they say, we make the world's best circuit splitters. And there's a claim that, oh, that's a claim of disparagement against competitors. And the New York Appellate Division says, no, it's not. That's not a claim of disparagement. Even the fact that you're saying you're the best is not enough to disparage everyone else. Here his claim is he's saying he's one of the group. Right? His product was A, surface disinfectant. That naturally somehow disparages all other surface disinfectants. That's obviously very far away from New York law, and there is no case that has ever approved of such a theory. I think this is not a question where there are big questions of law to be resolved. The question is, does the first amended complaint in the underlying action, the Proskin complaint, does that actually allege anything that falls within disparagement as it's understood under New York insurance law? Whichever one of these applies here. And he has cited no case. There is no such case that would allow it to fall within that category. I want to, a couple of quick responses to what opposing counsel mentioned. First of all, the notion that Sumi was cheaper than Lysol, somehow constituting disparagement. Rejected by the New York Appellate Division in the JMZ case, which we cite in the Applee brief, which is not responded to in the reply brief at all. It's plain on its face. You can look at that decision. That is not a disparagement claim under New York law. It's also clear that that makes sense. There's a range of price points that products put themselves out at. The mere fact that one is cheaper does not mean it's disparaging the other ones. We have generics. We have brands that are not as well known as other ones. Premium brands are able to charge more because people know them. That's the way the market works. New York law recognizes that. JMZ says that. So that's not a basis. I do want to turn very quickly, although I'm cognizant of the fact that none of your honors asked questions regarding this, but with regard to his allegations that somehow there's a disparagement claim that's been made under California law in the underlying complaint. First of all, as this court has said over and over again, and as the New York courts have said over and over again, the question is, what are the pleaded facts? Not what statutes did you invoke or what was the title of your cause of action when you got to count three. The question is, what are the pleaded facts? And because there are no pleaded facts of disparagement, it doesn't matter what statutes are pleaded. And the Stanford wallpaper case, which is cited in the recent Sumi decision that Judge Fela wrote, and we had the 28J letter on that, cites to Stanford wallpaper. And Stanford wallpaper, this court says very clearly, it doesn't matter the way the legal causes of action are designated in the underlying complaint. What matters are the alleged facts. But even if you ignored this court's case law on that, even if you ignored New York law, which is of course entirely consistent with Stanford wallpaper, the Mugavero case, which we cite in our briefs as an indication of that from the New York Court of Appeals, even if you ignored all that and you looked at the statutory references and said, well, we're going to see if somehow someone could have made a claim under that kind of statutory claim that would have constituted disparagement. If you look at page 229 of the joint appendix, which is their The citation is to section 1750 et sec. And that goes on for dozens and dozens of statutory sections. It's as if they're incorporating an entire title of the U.S. Code in the complaint. In fact, if you look at page 229 of the joint appendix, I believe it's repeated also in 646 of the joint appendix, you'll see that they do call out certain specific subsections of 1750 et sec. And none of them are the one that he's saying on appeal necessarily connotes a claim of disparagement. He's saying that it's 1770A8. But if you look at the joint appendix, you will only see A9, A5, and A7 called out. So even at that level, even at the ignore Stanford wallpaper and Mugavero level, he doesn't have anything here. If there are no further questions, I'll note that we do, of course, have two other bases for affirmance. Those are the exclusions which were decided by Judge Abrams. I believe those are well presented in the papers. I don't need to address them here. I have some questions. Thank you. Thank you, counsel. First, I think it's important that you look at the entirety of the last three cases that I cited in light of the allegations. And if you want to take a look at Julie, I commend you to do so. Only look at it very carefully because the version of it that has been shared with you is not complete. And what's going on there is that it's a different legal standard than the one that they articulate. And so that's a problem. And you have to be very sensitive to that. Look at Volbag. Volbag said, hey, we're organic. Maybe not. That's no different than saying, hey, we have the same basis. Basically, Hartford lost Volbag at oral argument. They had to go back to the collateral estoppel issue, which is the only issue that court raised. And you only reach under California law, under the Waller case, which Allied World files, if you can show that the excluded conduct relates back to that which was covered. So they had to believe there was coverage in order to get to any exclusion and doctrine like collateral estoppel. BASF. If you look at what happened there, the Seventh Circuit punted on the statute in Illinois that mirrors the statute in California 1770 A8. Didn't address it at all. And the petition for a hearing points out the same logic that would apply to more facts as to why that court ignored an inconvenient truth about how that statute would have required that there be a defense. And that's a very problematic aspect of how they're playing this. In Hartford v. Switney, a year after Organic, the court clarified three implicit disparagement cases, each of which I litigated, that Thank you both for your time.